**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

NATHAN BEMENT,
*an individual,*

Plaintiff,

v. Case No. 1:25-cv-25511-CMA

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 769, a labor organization; THOMAS ESPOSITO, in his official capacity as Business Agent,

Defendants.
______________________________________________/

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, Nathan Bement, by and through undersigned counsel, sues Defendants International Brotherhood of Teamsters Local 769 ("Local 769" or the "Union") and Thomas Esposito, in his official capacity as Business Agent of Local 769, and alleges as follows:

**INTRODUCTION**

1. This is a hybrid action under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging (i) breach of the duty of fair representation; (ii) religious discrimination; and (iii) retaliation.

2. Plaintiff is a devout Catholic and 32-year veteran employee of United Airlines ("United") whose sincerely held religious beliefs prohibit him from receiving COVID-19 vaccines. When United denied his religious accommodation request and terminated his employment in

connection with United's mandatory COVID-19 vaccine policy, Plaintiff turned to his union, Local 769, for representation. Local 769 refused to represent him at any stage.

3. While Local 769 actively represented other members during the same period in connection with non-religious workplace grievances, including discipline, attendance, scheduling, and non-religious accommodation matters, the Union refused to file any grievance, refused to investigate, refused to seek enforcement of any accommodation, and refused to take any action whatsoever on Plaintiff's behalf. The Union's refusal continued not only throughout United's accommodation review and discharge process but also after Plaintiff's termination, when Plaintiff continued to request representation, grievance filing, and post-discharge assistance.

4. Plaintiff opposed United's denial of his religious accommodation through multiple formal channels: he filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), a religious-exemption complaint with Florida authorities under Fla. Stat. § 381.00317 (which resulted in United paying a $15,000 fine to the State of Florida), and pursued his claims in federal court. Plaintiff in good faith and reasonably believed that United had engaged in unlawful religious discrimination in violation of Title VII. Plaintiff's requests for union representation in connection with that discriminatory conduct, made directly to Local 769 and to a Local 769 representative who attended a November 15, 2021 United fact-finding meeting concerning Plaintiff's case, were statutorily protected activity.

5. Defendants' refusal to represent Plaintiff was arbitrary, discriminatory, retaliatory, and in bad faith, and was undertaken because of Plaintiff's religion and because of his protected opposition to what he reasonably believed to be unlawful religious discrimination.

## JURISDICTION AND VENUE

6. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1337, the RLA, 45 U.S.C. § 151 et seq., and 42 U.S.C. § 2000e-5(f)(3).

7. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendants reside or operate in this District, the relevant collective bargaining relationship was administered in this District, and a substantial part of the events giving rise to the claims occurred here.

## PARTIES

8. Plaintiff Nathan Bement is an individual currently residing in West Virginia. At all relevant times material to this action, Plaintiff resided in Florida and was a dues-paying member of Local 769.

9. Defendant International Brotherhood of Teamsters Local 769 is a labor organization within the meaning of Title VII, 42 U.S.C. § 2000e(d), and the RLA, with its principal place of business in Miami-Dade County, Florida. At all relevant times, Local 769 was the exclusive collective bargaining representative for Plaintiff's craft or class of employees at United.

10. Defendant Thomas Esposito was at all relevant times a Business Agent of Local 769, sued in his official capacity. Esposito was the Business Agent assigned to and responsible for representing Plaintiff's craft or class at United.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Religious Beliefs

11. Plaintiff began working for United on January 16, 1989, as a Sheet Metal Line Technician. Over more than 32 years of service, Plaintiff accumulated significant seniority, wages, and retirement benefits.

12. Plaintiff is a devout Catholic. His sincerely held religious beliefs prohibit him from receiving COVID-19 vaccines, including, without limitation, beliefs concerning the use of aborted-fetal-cell–line–derived materials in vaccine development and testing, and beliefs concerning the sanctity and stewardship of the human body.

### B. United's Vaccine Mandate and Its Discriminatory Administration

13. In or about August 2021, United announced and implemented a mandatory COVID-19 vaccine requirement applicable to its U.S.-based employees, including those represented by Local 769.

14. On September 23, 2021, Plaintiff submitted a written religious-accommodation request to United, explaining the religious basis of his Catholic objection to receiving a COVID-19 vaccine, including his objection to vaccines developed or tested using aborted-fetal-cell lines.

15. On or about September 24, 2021, United denied Plaintiff's religious-accommodation request, citing untimeliness as the stated reason — specifically, that Plaintiff had not submitted his request by an August 31, 2021 cutoff date — and without conducting any inquiry into the sincerity or substance of Plaintiff's religious beliefs.

16. On or about November 8, 2021, Plaintiff filed a charge of religious discrimination against United with the EEOC.

17. On November 15, 2021, United held a fact-finding meeting concerning Plaintiff's noncompliance with the vaccine mandate. Local 769 representatives Mike Blomquist (Chief Shop Steward) and Mike Shepard (Shop Steward) attended that meeting alongside Plaintiff and corporate representatives of United.

18. Following the November 15, 2021 fact-finding meeting, United issued Plaintiff a termination letter. Defendant Esposito was identified as a recipient of that termination letter on its face. By no later than December 7, 2021, Defendants had received written notice that Plaintiff's discharge arose from his noncompliance with United's vaccine mandate.

19. On or about November 25, 2021, Plaintiff submitted a Florida Department of Health Religious Exemption form to United pursuant to Fla. Stat. § 381.00317. United denied that request on or about December 1, 2021, again citing untimeliness.

20. On or about December 1, 2021, Plaintiff filed an administrative complaint with the State of Florida alleging that United had violated Fla. Stat. § 381.00317 in connection with its handling of his religious-exemption request. That administrative proceeding subsequently resulted in a settlement under which United paid $15,000 to the State of Florida in connection with its administration of religious-exemption requests under Fla. Stat. § 381.00317.

21. On or about December 7, 2021, United terminated Plaintiff's employment in connection with the vaccine mandate.

22. For the avoidance of doubt, Plaintiff also pursued religious-discrimination and retaliation claims directly against United arising from the same accommodation denial and discharge in *Bement v. United Airlines, Inc.*, No. 1:24-cv-09201 (N.D. Ill.). The district court dismissed those claims on pleading grounds, and Plaintiff's appeal of that dismissal is pending before the United States Court of Appeals for the Seventh Circuit, *Bement v. United Airlines, Inc.*,

No. 25-1915. The claims asserted in this action are independent of those claims in three material respects. First, they are asserted against a different defendant: Local 769 and Esposito, not United. Second, they rest on distinct duties: the Union's statutory duty of fair representation under the RLA and the prohibitions on labor-organization conduct under 42 U.S.C. §§ 2000e-2(c) and 2000e-3(a), neither of which was at issue in the action against United. Third, the elements at issue here differ from those addressed in the prior action: Plaintiff's Title VII retaliation claim in this action turns on his subjectively honest and objectively reasonable belief that United was engaged in unlawful religious discrimination — a question of Plaintiff's good-faith belief that is independent of the merits adjudication of any underlying claim against United, *see Little v. United Techs.*, 103 F.3d 956, 959-60 (11th Cir. 1997) (Title VII retaliation plaintiff "need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a prima facie case") — and Plaintiff's discrimination and duty-of-fair-representation claims turn on the conduct and motivations of Defendants in this action, which were not adjudicated in the prior action.

23. Upon information and belief, United received a substantial volume of religious-accommodation requests from its U.S.-based employees in response to the mandate and adopted policies and practices that adversely affected religious objectors, including denial of accommodation requests and the imposition of indefinite unpaid leave.

24. Upon information and belief, United granted religious-exemption accommodations to other employees, including newly-hired employees, after the August 31, 2021 cutoff date United invoked to deny Plaintiff's request, notwithstanding Plaintiff's more-than-32-year tenure with United.

25. Based on (a) United's denial of Plaintiff's religious-accommodation request without any individualized assessment of the sincerity or substance of his religious beliefs; (b) United's discharge of Plaintiff in connection with his religious noncompliance with the mandate; (c) United's grant of religious-exemption accommodations to other employees after the same cutoff date United invoked to deny Plaintiff's request; (d) the State of Florida's administrative proceeding concerning United's handling of religious-exemption requests, which culminated in the settlement described in paragraph 20; and (e) the publicly reported pattern of United's adverse treatment of religious objectors and the contemporaneous litigation regarding United's administration of its mandate, Plaintiff in good faith and reasonably believed at the time, and continues to believe, that United's denial of his religious-accommodation request and his consequent discharge constituted unlawful religious discrimination in violation of Title VII's prohibition on discrimination because of religion and on the failure to reasonably accommodate sincerely held religious beliefs.

**C. Defendants' Refusal to Represent Plaintiff**

26. From in or about August 2021, when United announced its vaccine mandate, and continuing thereafter, Defendants took the position with Local 769 members, including Plaintiff, that United was free to implement the vaccine mandate as it saw fit and that the Union could do nothing to oppose it. Local 769 stewards informed members, including Plaintiff, that there would be no member meetings on the mandate, no member vote on the mandate, and no Union opposition to the mandate.

27. Throughout the period beginning in or about September 2021 and continuing after his December 7, 2021 termination, Plaintiff repeatedly requested that Local 769 and Business

Agent Esposito represent him in connection with United's denial of his religious-accommodation request and his resulting discharge.

28. Plaintiff's requests for representation, made directly to Local 769 and to Esposito as his assigned Business Agent, included requests to (a) file a grievance under the applicable collective bargaining agreement ("CBA") challenging United's denial of his religious accommodation; (b) file a grievance challenging his discharge; (c) seek enforcement of the Union's and the CBA's nondiscrimination provisions; (d) investigate the circumstances of the denial and discharge; and (e) provide post-discharge assistance, including pursuit of reinstatement and back-pay remedies.

29. During the period leading up to and surrounding Plaintiff's discharge, Defendants did not file any grievance under the CBA's nondiscrimination provisions or under any religious-accommodation framework, did not conduct any investigation of United's denial of Plaintiff's religious accommodation, made no demand for accommodation enforcement, and took no action under the CBA to challenge United's denial of Plaintiff's religious accommodation.

30. Following Plaintiff's December 7, 2021 termination, Defendants prepared a draft grievance and presented it to Plaintiff. The draft grievance was prepared under the procedural framework of CBA Article 19, which by its terms applies only to "disciplinary action[s] not involving loss of pay" and accordingly was inapplicable to Plaintiff's discharge. The draft grievance alleged that United's conduct violated CBA Article 14 (Safety and Health) on a notice-of-policy-change theory, and did not invoke the CBA's nondiscrimination protections, the religious-accommodation framework, or any other theory addressing the religious character of Plaintiff's claim. The draft grievance also required Plaintiff to authorize Defendants to determine

and accept any resolution on his behalf. Plaintiff declined to sign the draft grievance on those terms.

31. The draft grievance described in paragraph 30 was the only grievance-related action Defendants took in connection with Plaintiff's religious-accommodation request and discharge. Defendants did not pursue any grievance under the CBA's nondiscrimination provisions, did not pursue Plaintiff's religious-accommodation claim under any other procedure, and did not communicate to Plaintiff any final, unequivocal refusal to take further action on his behalf.

32. Defendants' refusal to act on Plaintiff's religious-accommodation grievance was ongoing and continuing in nature and was not finally and unequivocally communicated to Plaintiff within six months of his December 7, 2021 termination. Plaintiff did not learn, and in the exercise of reasonable diligence could not have learned, that the Union's refusal to take further action was final and unequivocal until within six months of the filing of this action.

## D. Differential Treatment of Members with Non-Religious Grievances

33. During the same period in which Defendants refused to represent Plaintiff, Local 769 and Esposito actively represented other Local 769 members in connection with non-religious workplace grievances arising under the same CBA and involving the same employer.

34. Upon information and belief, the non-religious grievances Local 769 processed during this period included, without limitation, grievances concerning (a) discharge and discipline unrelated to the vaccine mandate; (b) seniority disputes; (c) work assignments and scheduling; (d) compensation and benefit calculations; and (e) accommodation requests based on non-religious grounds, including medical accommodation requests in connection with the same vaccine mandate.

35. Upon information and belief, Local 769 represented one or more United employees in Plaintiff's craft or class who sought medical or other non-religious exemptions from the same vaccine mandate, while refusing to represent members, including Plaintiff, who sought religious exemptions.

36. The non-religious grievances Defendants processed were similar to Plaintiff's in all relevant respects: they arose under the same CBA, were directed at the same employer (United), implicated the same Union duty of fair representation, and were the type of matters Local 769 routinely processed. The grievances differed from Plaintiff's only in that they did not involve a religious basis.

37. The disparate treatment of Plaintiff—a Catholic member seeking representation in connection with a religious accommodation—compared to other members with non-religious grievances arising during the same period and under the same CBA, gives rise to a reasonable inference that Defendants' refusal to act was motivated by religion.

38. Defendants' conduct was arbitrary, discriminatory, retaliatory, and in bad faith.

**E. EEOC Charge and Right-to-Sue**

39. Plaintiff filed a charge of discrimination against Local 769 with the Equal Employment Opportunity Commission ("EEOC") on or about November 1, 2022, EEOC Charge No. 510-2022-06887, alleging religious discrimination and retaliation by the Union. The charge was timely as to Defendants' continuing course of conduct in failing and refusing to represent Plaintiff in connection with United's denial of his religious accommodation and his discharge, which conduct extended into the 300-day limitations period preceding the charge. The EEOC issued Plaintiff a Notice of Right to Sue dated August 25, 2025, and Plaintiff filed this action within 90 days of receipt of that Notice.

**F. Injuries**

40. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered termination of his more-than-32-year career; loss of wages, benefits, retirement contributions, and seniority; loss of professional reputation; and substantial emotional distress, including anxiety, humiliation, and inconvenience.

## COUNT I

## BREACH OF DUTY OF FAIR REPRESENTATION (RLA)

### (Against Local 769)

41. Plaintiff realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

42. At all relevant times, Local 769 was the exclusive collective bargaining representative of Plaintiff and other employees in his craft or class under the RLA and owed Plaintiff a statutory duty of fair representation.

43. Local 769 breached its duty of fair representation by acting arbitrarily, discriminatorily, and in bad faith. Local 769 refused to file a grievance challenging United's denial of Plaintiff's religious accommodation; refused to file a grievance challenging Plaintiff's discharge; refused to enforce the CBA's nondiscrimination and just-cause provisions; refused to investigate Plaintiff's claims; and refused to provide any representation at any stage of the accommodation, disciplinary, or post-discharge process.

44. Local 769's breach was discriminatory because it processed and pursued grievances on behalf of similarly situated members with non-religious grievances during the same period while refusing to act on Plaintiff's religion-based grievance.

45. Local 769's breach was in bad faith because it was undertaken with the intent to abandon Plaintiff's grievance because of its religious character and because of his protected opposition to what he reasonably believed to be unlawful religious discrimination.

46. Local 769's breach was arbitrary because the Union failed to engage in any reasoned consideration of the merits of Plaintiff's religious-accommodation grievance, refused to communicate any basis for its inaction on that grievance, and pursued only an inapplicable post-termination grievance procedure (under CBA Article 19, which by its terms applies only to disciplinary actions not involving loss of pay) on a substantive theory (CBA Article 14) that did not address the religious character of Plaintiff's claim.

47. Local 769's refusal to act was not finally and unequivocally communicated to Plaintiff until within six months of the filing of this action. Plaintiff did not know, and in the exercise of reasonable diligence could not have known, that the Union's inaction was final, as opposed to ongoing or under continuing consideration, until within the limitations period.

48. As a direct and proximate result of Local 769's breach, Plaintiff has suffered the damages described in paragraph 40.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Local 769, and award compensatory damages, including back pay, front pay, lost benefits, and emotional-distress damages; pre- and post-judgment interest; attorneys' fees and costs to the extent permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT II

## RELIGIOUS DISCRIMINATION — TITLE VII, 42 U.S.C. § 2000e-2(c)

**(Against Local 769 and Esposito in His Official Capacity)**

49. Plaintiff realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

50. Local 769 is a labor organization within the meaning of Title VII. 42 U.S.C. § 2000e(d).

51. Title VII makes it unlawful for a labor organization to discriminate against any individual because of religion, or to cause or attempt to cause an employer to discriminate against an individual because of religion. 42 U.S.C. § 2000e-2(c)(1), (3).

52. Plaintiff is a member of a protected class: he is a Catholic, and the grievance for which he sought representation arose from the exercise of his sincerely held Catholic religious beliefs.

53. Defendants discriminated against Plaintiff because of his religion by refusing to represent him in connection with United's denial of his religious-accommodation request and his resulting discharge, while during the same period actively representing other Local 769 members in connection with non-religious grievances under the same CBA, including members who sought medical or other non-religious exemptions from the same vaccine mandate.

54. The members whom Defendants represented during the relevant period were similarly situated to Plaintiff in all material respects: they were Local 769 members covered by the same CBA, employed by the same employer (United), and seeking the Union's assistance with workplace grievances of the same general type Local 769 routinely processed. The only material

difference between Plaintiff and the comparator members was the religious nature of Plaintiff's grievance.

55. The contrast between Defendants' active representation of members with non-religious grievances and their complete refusal to provide any representation in connection with Plaintiff's religious grievance, occurring during the same period and under the same CBA, supports a reasonable inference that Defendants' refusal was motivated by religion.

56. Defendants' conduct was intentional and was undertaken with malice or with reckless indifference to Plaintiff's federally protected rights.

57. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered the damages described in paragraph 40.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award compensatory damages, including back pay, front pay, lost benefits, and emotional-distress damages; punitive damages to the extent permitted by law; pre- and post-judgment interest; attorneys' fees and costs under 42 U.S.C. § 2000e-5(k); and such other and further relief as the Court deems just and proper.

## COUNT III

## RETALIATION — TITLE VII, 42 U.S.C. § 2000e-3(a)

## (Against Local 769 and Esposito in His Official Capacity)

58. Plaintiff realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

59. Title VII prohibits a labor organization from discriminating against any individual because he has opposed any practice made an unlawful employment practice under Title VII, or

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

60. Plaintiff engaged in statutorily protected activity by, among other things, (a) submitting to United a written request for religious accommodation from its COVID-19 vaccine mandate on or about September 23, 2021; (b) filing a charge of religious discrimination against United with the EEOC on or about November 8, 2021; (c) filing an administrative complaint with the State of Florida on or about December 1, 2021 alleging that United had violated Fla. Stat. § 381.00317 in connection with its handling of his religious-exemption request; and (d) communicating to Local 769 and to Esposito that United was discriminating against him on the basis of his religion in violation of law and seeking the Union's representation in opposition to that conduct, including United's denial of religious accommodation and discharge based on religious noncompliance.

61. Plaintiff's belief that United's denial of his religious-accommodation request and his resulting discharge constituted unlawful religious discrimination was both subjectively honest and objectively reasonable. United categorically denied Plaintiff's request without any individualized inquiry into the sincerity or substance of his religious beliefs, despite his more-than-32-year tenure. The same vaccine mandate gave rise to an administrative proceeding under Fla. Stat. § 381.00317 — a statute that, among other things, requires private employers to provide religious-belief exemptions from COVID-19 vaccination requirements — in which United paid $15,000 to the State of Florida in connection with its administration of religious-exemption requests. United's administration of its vaccine mandate also gave rise to litigation in other jurisdictions, including *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) (unpublished). Plaintiff's contemporaneous decisions to file an EEOC charge

of religious discrimination and a Florida administrative complaint reflect his subjectively honest belief that United's conduct was unlawful. A reasonable employee in Plaintiff's position, faced with a categorical denial of a religious-accommodation request without individualized assessment and a discharge based on religious noncompliance, would have believed that United's conduct constituted religious discrimination and a failure to reasonably accommodate religious belief in violation of Title VII.

62. Defendants knew that Plaintiff's requested representation arose from his religious-accommodation request and his opposition to United's denial of that request. Plaintiff communicated the religious nature of his grievance directly to Local 769 and to Esposito. By no later than the November 15, 2021 fact-finding meeting attended by Local 769 representatives Mike Blomquist and Mike Shepard, Defendants had actual knowledge of Plaintiff's religious-accommodation request and United's denial of that request. Defendant Esposito was identified on the face of the December 7, 2021 termination letter United issued to Plaintiff.

63. Defendants took materially adverse action against Plaintiff because of his protected activity. Defendants refused to file any grievance, refused to investigate, refused to seek enforcement of any accommodation, refused to provide any post-discharge assistance, and abandoned Plaintiff to termination. A union's deliberate refusal to process a member's grievance because of protected activity is action that well might dissuade a reasonable worker from making or supporting a charge of discrimination. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

64. There is a causal connection between Plaintiff's protected activity and Defendants' adverse action. The causal link is established by, among other things, (a) the close temporal proximity between Plaintiff's protected activity and Defendants' refusal to act, including

Defendants' inaction in the days and weeks following the November 15, 2021 fact-finding meeting at which Plaintiff's religious-accommodation claim was at issue and a Local 769 representative was present; and (b) the religion-specific character of the refusal, in that Defendants represented members with non-religious grievances during the same period and under the same CBA while refusing all assistance to Plaintiff.

65. Defendants' conduct was intentional and was undertaken with malice or with reckless indifference to Plaintiff's federally protected rights.

66. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered the damages described in paragraph 40.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award compensatory damages, including back pay, front pay, lost benefits, and emotional-distress damages; punitive damages to the extent permitted by law; pre- and post-judgment interest; attorneys' fees and costs under 42 U.S.C. § 2000e-5(k); and such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 1, 2026

Respectfully submitted,

**SABATINI LAW FIRM, P.A.**

/s/ Anthony F. Sabatini
Anthony F. Sabatini
Florida Bar No. 1018163
Sabatini Law Firm, P.A.
1601 E. 1st Avenue
Mount Dora, FL 32757
(352) 455-2928
anthony@sabatinilegal.com

/s/ John M. Pierce
John M. Pierce (California Bar No. 250443)
(*Admitted Pro Hac Vice*)
John Pierce Law P.C.
21550 Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
(321) 961-1848
jpierce@johnpiercelaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2026, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served on all counsel of record.

/s/ Anthony F. Sabatini