**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-25511-CIV-ALTONAGA/Reid**

NATHAN BEMENT, )
)
Plaintiff, )
)
v. )
)
INTERNATIONAL BROTHERHOOD )
OF TEAMSTERS, LOCAL 769, )
and THOMAS ESPOSITO )

Defendants. )
______________________________________/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, TEAMSTERS LOCAL UNION NO. 769 ("Union" or "Local 769") and THOMAS ESPOSITO, in his official capacity as Business Agent ("Defendant Esposito") (together "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss Plaintiff NATHAN BEMENT's ("Plaintiff" or "Bement") Second Amended Complaint with prejudice for failure to state a claim upon which relief can be granted. In support of this motion, Defendants state the following:

Plaintiff's Second Amended Complaint does not cure the defects identified in Defendants' prior motion. Instead, the new allegations confirm that Plaintiff's claims are untimely and remain inadequately pled. Count I is barred by the six-month statute of limitations applicable to duty of fair representation claims under the Railway Labor Act ("RLA") and fails to state a claim upon which relief can be granted. Counts II and III are untimely because they arise from an EEOC charge for which the right-to-sue notice was dated April 3, 2024. Even if Counts II and III were

timely, they still fail because they rely on conclusory allegations and do not plead sufficient factual matter to state a plausible claim for relief.

## ARGUMENT

### I. Standard of Review for a Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss, the court accepts a complaint's well-pled allegations as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The court is not required to accept and assume a plaintiff's legal conclusions and conclusory allegations are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plaintiff must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); Fed. R.Civ. P. 8(a)(2). Plaintiffs therefore must make a "showing" rather than broadly assert entitlement to relief. *Id.* A complaint must state a plausible claim for relief with facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.*

### II. Count I Should Be Dismissed Because Plaintiff's Duty of Fair Representation Claim is Barred by the Six-Month Statute of Limitations

A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate where it is apparent "from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted). The Eleventh Circuit has held that a six-month limitations period applies to duty of fair representation claims under the RLA. *Smallakoff v. Air Line Pilots Ass'n, Intern.*, 825 F.2d 1544, 1546 (11th Cir. 1987). The six-month limitation period "starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation." *Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1582

(S.D. Fla. 1993), aff'd, 193 F.3d 1185 (11th Cir. 1999) (quoting *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir.1986)). Courts have recognized that the time for filing a duty of fair representation claim is not tolled by pursuing a Title VII claim with the EEOC. *See Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 550 (7th Cir. 1987) (holding that a plaintiff's duty of fair representation claim is "not tolled by pursuing a Title VII claim with the EEOC").

This Court previously declined to dismiss Count I on statute of limitations grounds because the Amended Complaint was unclear as to whether the Union's alleged refusal to represent Plaintiff ended with Plaintiff's December 7, 2021 termination or continued thereafter. The Second Amended Complaint resolves that ambiguity.

Plaintiff continues to generally allege that the Union's breach of the duty of fair representation arises from its alleged failure to represent him from September 2021 through his December 7, 2021 termination in connection with United Airlines'[1] ("United") vaccine mandate, and his request for religious accommodation. DE 34 ¶¶ 27-30. Plaintiff attempts to avoid the statute of limitations argument by alleging that the Union "did not communicate to Plaintiff any final, unequivocal refusal to take further action on his behalf" and that "Plaintiff did not learn, and in the exercise of reasonable diligence could not have learned, that the Union's refusal to take further action was final and unequivocal until within six months of the filing of this action." DE 34 ¶¶ 31-32.

That assertion is not only conclusory but also directly contradicted by the other new allegations Plaintiff made in the Second Amended Complaint. Specifically, Plaintiff alleges that following his termination on December 7, 2021, Defendants prepared a draft grievance on his behalf. DE 34 ¶ 30. Plaintiff alleges that he declined to sign the grievance because he disagreed

[1] Plaintiff was employed by United Arlines. DE 34 ¶ 11.

with its terms and theory. DE 34 ¶¶ 30-31. Those allegations, taken as true, do not show an ongoing post-termination refusal by the Union to represent Plaintiff that lasted until within six months of November 2025. They show the opposite. These allegations show that the Union sought to initiate the grievance process after Plaintiff's termination, and Plaintiff declined to authorize the grievance. Plaintiff cannot transform his own refusal to proceed with the Union's proposed post-termination grievance into an ongoing refusal by the Union to process that grievance.

Plaintiff's own EEOC allegations further defeat any suggestion that he did not know of the alleged violation until within six months of filing this lawsuit. Plaintiff alleges in the Second Amended Complaint that on November 1, 2022, he filed an EEOC charge against the Union alleging religious discrimination and retaliation based on "Defendants' continuing course of conduct in failing and refusing to represent Plaintiff in connection with United's denial of his religious accommodation and his discharge." DE 34 ¶ 39. Thus, by November 1, 2022 at the latest, Plaintiff knew of the acts constituting the alleged breach of the duty of fair representation. He cannot plausibly allege that he did not know the Union's alleged refusal was final until within six months of November 2025 when he had already filed an EEOC charge against the Union three years earlier based on the same alleged conduct. Further, as noted above, an EEOC charge does not toll a duty of fair representation statute of limitations. *See Johnson*, 826 F.2d at 550.

Plaintiff initiated this action on November 24, 2025, nearly three years after his EEOC charge against Local 769 and almost four years after the alleged conduct giving rise to Count I. Count I is therefore time-barred and should be dismissed with prejudice.

## III. Count I Fails Because Plaintiff Does Not Allege Facts Showing the Union Acted Arbitrarily, Discriminatorily, or in Bad Faith.

Even if the Court does not dismiss Count I as untimely at the pleading stage, Count I still fails because the Second Amended Complaint does not allege facts that, accepted as true, plausibly

establish that the Union breached its duty of fair representation. A union breaches its duty of fair representation when its conduct toward a bargaining unit member is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991); *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). While *Vaca* involved a claim under the NLRA, the Ninth Circuit has held that *Vaca* applies to claims under RLA because "the RLA and NLRA are substantially identical, and cases decided under one are applicable to the other." *Hernandez v. CIA Mexicana de Aviacion, S.A.*, 879 F.2d 865 (9th Cir. 1989).

Whether a union acted arbitrarily, discriminatorily, or in bad faith involves distinct and separate inquiries. *Thompson v. Aluminum Co. of America*, 276 F.3d 651, 657 (4th Cir. 2002). A union's actions are arbitrary *only if*, in light of the factual and legal landscape at the time of its actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Air Line Pilots*, 499 U.S. at 67. A union's conduct is discriminatory when the union "without a legitimate purpose, take[s] action favoring some of its members at the expense of others." *Ramey v. Dist. 141*, 378 F.3d 269, 277 (2d Cir.2004) (citations omitted). A union acts in bad faith when it "acts with an improper intent, purpose, or motive. Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v. Air Line Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir.1998).

This high threshold for establishing a breach of the duty of fair representation is an essential principle of labor law which allows labor unions to have discretionary power to manage grievances brought under collective bargaining agreements. *Vaca*, 386 U.S. at 191. Unions as a result can legitimately control the grievance and arbitration mechanism in their labor contracts, eliminating frivolous grievances, working with employers to settle grievances, ensuring the consistent treatment of complaints, isolating major interpretive issues, and reinforcing the union's role in

representing all employees. *Pyzynski v. New York Cent. R. Co.*, 421 F.2d 854 (1970) (*citing Cox, Rights Under a Labor Agreement*, 69 HARV.L.REV. 601 (1956)). Thus, bargaining unit employees (such as the Plaintiff) are subject to the union's discretionary power to craft, settle or even abandon a grievance, so long as the union does not act arbitrarily, discriminatorily, or in bad faith. *Vaca* 386 U.S. at 191; *see also Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989), 868 F.2d at 1061 (holding that "unions are free to negotiate and accept settlements even without the grievants' approval.").

Plaintiff's main factual allegations in support of his theory of the breach of the duty of fair representation are (1) that the Union took the position that United was free to implement a vaccine mandate and therefore failed to "oppose it," and (2) that over the period leading up to and surrounding Plaintiff's discharge, Defendants did not file any grievance under the CBA's nondiscrimination provisions or under any religious accommodation framework, did not conduct any investigation of United's denial of Plaintiff's religious accommodation, made no demand for accommodation enforcement, and took no action under the CBA to challenge United's denial of Plaintiff's religious accommodation. DE 34 ¶¶ 26, 29. Plaintiff then labels that conduct discriminatory because Local 769 allegedly processed grievances for "similarly situated members with non-religious grievances" while refusing to "act on Plaintiff's religion-based grievance." DE 34 ¶ 44. He labels it bad faith because it was allegedly "undertaken with the intent to abandon Plaintiff's grievance" due to its religious character and his opposition to United's alleged discrimination. DE 34 ¶ 45. And he labels it arbitrary because the Union allegedly "failed to engage in any reasoned consideration of the merits" of his grievance and presented a draft grievance Plaintiff disagreed with. DE 34 ¶ 46.

Apart from being unsupported by factual allegations, Plaintiff's conclusory statements that Local 769 acted arbitrarily, discriminatorily, and in bad faith in failing to represent him are contradicted by the facts alleged in his own pleading. Plaintiff repeatedly characterizes the Union's conduct as a refusal to represent him, but the Second Amended Complaint alleges that two Local 769 representatives attended the November 15, 2021 fact-finding meeting with him, and that Defendants prepared a draft grievance on his behalf following his termination. DE 34 ¶¶ 17, 30. Plaintiff further alleges that he declined to sign the draft grievance because he disagreed with the procedure invoked, the substantive theory advanced, and the authorization language permitting Defendants to determine and accept a resolution on his behalf. DE 34 ¶ 30.[2] Those allegations do not plausibly show that the Union "abandoned" Plaintiff's grievance or refused to act. They show that the Union acted, selected a grievance theory, and presented Plaintiff with a grievance that Plaintiff chose not to authorize and move forward.

Plaintiff therefore attempts to plead a duty of fair representation claim by recasting his disagreement with the Union's proposed grievance strategy as a refusal to represent him. That is not sufficient. The duty of fair representation does not give an employee the right to dictate the legal theory, procedural vehicle, wording, strategy, or settlement authority of a union grievance. The Union's statutory role as exclusive representative necessarily gives it discretion to determine whether and how to pursue a grievance, including what theory to assert and what resolution to accept, subject only to the limitation that it may not act arbitrarily, discriminatorily, or in bad faith. Plaintiff also alleges no facts showing that other members were permitted to control the theories,

---

[2] Specifically, Plaintiff alleges that the draft grievance was prepared under CBA Article 19, that it alleged a violation of CBA Article 14 on a notice-of-policy-change theory, and that it did not invoke the CBA's nondiscrimination protections, the religious accommodation framework, or any other theory addressing the religious character of Plaintiff's claim. DE 34 ¶ 30.

procedures, or settlement authority governing their grievances, or that the Union's refusal to process Plaintiff's grievance on Plaintiff's preferred terms was irrational, dishonest, fraudulent, or motivated by religious animus. Further Plaintiff pleads no facts to establish that failing to oppose United's vaccine mandate or call for a membership vote was arbitrary, discriminatory, or in bad faith.

Even if Plaintiff could establish that the Union's position in failing to oppose United's vaccine policy, or crafting his grievance was in error or even negligent, courts have consistently held that "[n]either negligence on the part of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an arbitrary and perfunctory manner." *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982); *see also Roadway Exp., Inc. v. NLRB*, 427 F. App'x 838, 841 (11th Cir. 2011) ("Mere negligence is never sufficient to sustain a claim for breach of the duty of fair representation. Nor are simple mistakes of judgment during the representation."). "Nothing less than a demonstration that the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct will suffice" to establish a claim of a breach of the duty of fair representation. *Harris*, 668 F.2d at 1206. No such facts were pled here.

Because Plaintiff's Amended Complaint relies on conclusory labels rather than well-pleaded facts, it fails to state a plausible claim for breach of the duty of fair representation and must be dismissed under Rule 12(b)(6).

## IV. Counts II and III are Untimely

Counts II and III should be dismissed because Plaintiff failed to file suit within the 90-day period applicable to claims brought after receipt of an EEOC right-to-sue notice.

Plaintiff alleges that he filed an EEOC charge against Local 769 on or about November 1, 2022, identified as Charge No. 510-2022-06887, asserting claims for religious discrimination and

retaliation. DE 34 ¶ 39. Plaintiff further alleges that the EEOC issued a notice of right-to-sue dated August 25, 2025. *Id.* But the EEOC Notice sent to the Union for Charge No. 510-2022-06887 is dated April 3, 2024. *See* Ex. 1. This action was first initiated on November 24, 2025 and therefore Plaintiff's action was filed outside the 90-day period and are untimely.

Courts routinely take judicial notice of EEOC charges, right-to-sue letters, and related EEOC documents where their authenticity is not disputed. *Jackson v. Alto Experience, Inc.*, 716 F.Supp.3d 1327 (S.D. Fla. Feb, 12, 2024) (2024); *Hodge v. Miami Herald Co.*, No. 08-20633, 2008 WL 4180012, at *2 (S.D. Fla. Sept. 10, 2008) (taking judicial notice of an EEOC right to sue letter on grounds that "[a]lthough the EEOC letter was not attached by the Plaintiff to his Complaint, EEOC actions are matters of public record, and Plaintiff [ ] does not dispute its authenticity."); *Mann v. Green*, No. CV407-140, 2008 WL 1766779, *1 n.2 (S.D. Ga. Apr. 17, 2008) (finding that, because plaintiff's EEOC actions were matters of public record, the court could take judicial notice of the EEOC documents without converting the motion to dismiss into a motion for summary judgment); *Sequera v. Hunter Douglas Fabrication Co.*, 184 F. Supp. 2d 1227, 1229 n.2 (M.D. Fla. 2002) (taking judicial notice of the EEOC 1994 work sharing agreement). Given that the EEOC charge and the right-to-sue notice are explicitly referenced in the Second Amended Complaint, central to Plaintiff's claims, authentic and matters of public record, the Court may consider them at the Rule 12(b)(6) stage.

Accordingly, the judicially noticeable EEOC record establishes that the right-to-sue notice for Charge No. 510-2022-06887 issued on April 3, 2024, making Plaintiff's subsequent filing of this suit on November 24, 2025, untimely. Counts II and III should therefore be dismissed with prejudice.

**V. Counts II, and III Fail to State a Plausible Claim for Relief**

A. Count II Fails to Plausibly Allege Religious Discrimination by the Defendants

Title VII makes it unlawful for a labor organization to "exclude or expel from its membership, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin," or "to cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e-2(c)(1), (3). A "Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case," but must "provide 'enough factual matter (taken as true) to suggest' intentional race discrimination." *Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, No. 14-20321-CIV-MORENO, 2014 WL 3591600, at *6 (S.D. Fla. July 18, 2014) (quoting *Davis v. Coca–Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir.2008)).

The Court previously dismissed Count II because Plaintiff failed to allege facts sufficient to plausibly suggest intentional religious discrimination by Defendants. DE 32 at 9. The Second Amended Complaint does not cure that defect.

Plaintiff alleges that he is Catholic and that his sincerely held religious beliefs prohibit him from receiving COVID-19 vaccines. DE 34 ¶ 12. But much of the Second Amended Complaint concerns United's conduct, not Defendants' conduct: United implemented the vaccine mandate, denied Plaintiff's accommodation request, conducted the fact-finding meeting, issued the termination letter, and terminated Plaintiff's employment. DE 34 ¶¶ 13, 15, 17-18, 21. Those allegations do not state a Title VII discrimination claim against Defendants. The Second Amended Complaint does not allege facts showing that Defendants caused or attempted to cause United to discriminate against Plaintiff, participated in United's accommodation decision, or otherwise acted against Plaintiff because of his religion.

With respect to Defendants' own alleged conduct, Plaintiff alleges that Defendants took the position that United was "free to implement the vaccine mandate as it saw fit and the Union could do nothing to oppose it," and failed to pursue the particular representation Plaintiff wanted in connection with United's denial of his religious-accommodation request and resulting discharge. DE 34 ¶¶ 26, 29. Specifically, Plaintiff alleges that Defendants did not file a grievance under the collective bargaining agreement's ("CBA") nondiscrimination provisions or under any religious-accommodation framework, did not investigate United's denial of his religious accommodation, made no demand for accommodation enforcement, and took no action under the CBA to challenge that denial. DE 34 ¶¶ 26-29.

Plaintiff's own allegations also contradict his assertion that Defendants "refused to act" or refused to represent him. Plaintiff alleges that two Local 769 representatives attended the November 15, 2021, fact-finding meeting with him concerning his noncompliance with the vaccine mandate. DE 34 ¶ 17. He also alleges that Defendants prepared and presented him with a draft grievance after his termination, but that he declined to sign it because he disagreed with the procedure invoked, the substantive theory advanced, and the authorization language allowing Defendants to determine and accept a resolution on his behalf. DE 34 ¶¶ 30-31.

Plaintiff attempts to convert this alleged "failure" to represent him into intentional discrimination by asserting that Defendants represented other Local 769 members with "non-religious grievances and accommodation requests" during the same period in which they allegedly refused to represent him. *See* DE 34 ¶¶ 53-55. But the comparator allegations remain generic. Plaintiff identifies only broad categories of grievances the Defendants allegedly processed, including seniority disputes, work assignments and scheduling, compensation, benefits, and non-religious accommodation matters. *See* DE 34 ¶¶ 34. He also alleges, on information and belief,

that Defendants represented one or more United employees in his craft or class who sought medical or other non-religious exemptions from the same vaccine mandate. DE 34 ¶ 35. These allegations do not identify any specific similarly situated member, any comparable grievance, or any facts showing that Defendants treated a non-religious member more favorably under materially similar circumstances. Nor does Plaintiff identify any member who refused to sign a union-prepared grievance because he disagreed with the Defendants' theory, procedure, or settlement authority, but nevertheless received continued representation or a differently framed grievance.

Without such facts, Plaintiff's generalized allegation that Defendants processed other "non-religious grievances" does not plausibly suggest intentional religious discrimination. Plaintiff's conclusion that this alleged differential treatment creates a "reasonable inference that Defendants' refusal to act was motivated by religion" is therefore unsupported. DE 34 ¶ 37. *See also Scribner v. Collier County*, 2011 WL 2746813, at *4-5 (M.D. Fla. July 14, 2011) (granting motion to dismiss where plaintiff's allegations were conclusory in nature and "do not include factual allegations that show that the [comparator] is "similarly situated."); *Veale v. Florida Dept. of Health*, 2013 WL 5703577, at *4-5 (M.D. Fla. July 29, 2013) (granting motion to dismiss where plaintiff "has simply stated that there were other employees that were similarly situated, outside her protected class, who received more favorable treatment" and failed to include "any allegations of specific facts to explain how the disparate treatment occurred to even give rise to an inference of discrimination"). Given that plaintiff alleges discrimination based solely on differential treatment of a comparator, he must adequately substantiate that allegation, which he does not. *See, e.g., Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012).

As a result, Count II fails to allege facts suggesting religious discrimination and should be dismissed with prejudice.

B. Count III Fails to Plausibly Allege Retaliation

Plaintiff's retaliation claim suffers from the same defect. Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" 42 U.S.C. § 2000e-3(a).

As set forth by the Court in its Order (DE 32), to state a retaliation claim, a plaintiff "must plausibly allege he engaged in statutorily protected expression, he suffered a materially adverse . . . action, and there was a causal link between the protected expression and adverse action." *Henderson v. City of Birmingham*, 826 F. App'x 736, 741 (11th Cir. 2020) (alteration added; citation omitted). To establish the first element, Plaintiff must allege that he had a good-faith, objectively reasonable belief that the challenged conduct violated Title VII. *Ceus v. City of Tampa*, 803 F. App'x 235, 245-246 (11th Cir. 2020) (citing 42 U.S.C. § 2000e–3(a)).

The Court previously dismissed Count III because Plaintiff did not plead sufficient facts showing that he had a subjectively and objectively reasonable belief that United engaged in unlawful religious discrimination. The Second Amended Complaint attempts to cure that defect by adding allegations regarding United's conduct and Plaintiff's opposition to that conduct. But even with those additional allegations, Count III still does not plausibly allege retaliation by Defendants.

Plaintiff alleges that he submitted a written religious-accommodation request to United on September 23, 2021. DE 34 ¶ 14. Plaintiff alleges that, on or about September 24, 2021, United denied his religious-accommodation request, citing untimeliness of the request as the reason because Plaintiff had not submitted his request by United's August 31, 2021, cutoff date. DE 34 ¶

15. Plaintiff further alleges that United denied the request without conducting any inquiry into the sincerity or substance of his religious beliefs. *Id.*

Plaintiff also alleges that he opposed United's conduct through multiple formal channels. He alleges that, on or about November 8, 2021, he filed a charge of religious discrimination against United with the EEOC. DE 34 ¶ 16. He alleges that United held a fact-finding meeting on November 15, 2021, regarding his non-compliance with the vaccine mandate. DE 34 ¶ 17. He alleges that, on or about November 25, 2021, he submitted a Florida Department of Health Religious Exemption form to United pursuant to Fla. Stat. § 381.00317, which United again denied as untimely. DE 34 ¶ 19. He alleges that, on or about December 1, 2021, he filed an administrative complaint with the State of Florida alleging that United violated Fla. Stat. § 381.00317 in connection with its handling of his religious-exemption request. DE 34 ¶ 20. He further alleges that the Florida administrative proceeding later resulted in a settlement under which United paid $15,000 to the State of Florida in connection with its administration of religious-exemption requests under Fla. Stat. § 381.00317. *Id.* Finally, Plaintiff alleges that United terminated his employment on or about December 7, 2021, in connection with the vaccine mandate. DE 34 ¶ 21.

While this may be sufficient to establish that Plaintiff had a subjective belief that United had discriminated against him, these allegations do not establish that Plaintiff had an *objectively reasonable* belief. The Second Amended Complaint itself presents a facially non-discriminatory reason for United's denial of Plaintiff's accommodation request: Plaintiff submitted his religious-accommodation request to United after United's stated August 31, 2021, cutoff date. DE 34 ¶¶ 14-15.[3] Further, Plaintiff's Florida Department of Health Religious Exemption form, his Florida administrative complaint, and the resulting $15,000 settlement with the State of Florida concern

---

[3] Plaintiff's allegation that United granted newly hired employees religious-exception after the August 31, 2021 cutoff date is irrelevant, as he was not a new hire. DE 34 ¶¶ 11, 24.

alleged violations of Fla. Stat. § 381.00317, not religious discrimination under Title VII. DE 34 ¶¶ 19-20, 25.

In any event, even if the Court finds that Plaintiff adequately alleges protected activity, Count III still fails because the Second Amended Complaint does not allege facts showing a causal link between the protected expression and adverse action by Defendants. Plaintiff's denial of an accommodation and termination was imposed by his employer, not Defendants, and the only allegedly "adverse" conduct attributed to Defendants is the alleged failure to pursue a grievance or otherwise represent Plaintiff. DE 34 ¶¶ 2, 33-35. However, the Amended Complaint establishes that Defendants indeed attempted to represent him throughout the process, attending employer fact-finding meetings with him, and preparing a draft grievance form for him to sign and authorize. DE 34 ¶¶ 17, 30-31.

Plaintiff then tries attempts to plead a causal link by alleging facts that establish that Defendants knew that his requested assistance and representation arose from his religious accommodation request and his opposition to United's denial of that request. See DE 34 ¶ 62. But knowledge is not causation. Plaintiff's own allegations, therefore, do not support a plausible inference that the Union refused all assistance, much less that it did so because of religious discrimination or retaliatory animus.

Absent factual allegations showing protected activity, an adverse action by Defendants because of that protected activity, or a causal connection between the two, Count III fails to state a claim and should be dismissed with prejudice.

**V. Dismissal Should Be With Prejudice**

A district court may dismiss a case with prejudice after a plaintiff has been afforded the opportunity to amend their initial complaint. *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*,

673 F. App'x 925, 930 (11th Cir. 2016). Dismissal with prejudice may also be warranted if any subsequent amendments would be "futile," *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319-20 (11th Cir. 1999), or would cause "undue prejudice to the defendants." *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (*quoting Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000)).

Here, the Court has already afforded Plaintiffs an opportunity to amend their Amended Complaint and still has not cured the pleading deficiencies. *See* DE 32. Allowing Plaintiff a subsequent amendment would therefore be futile. Allowing Plaintiff to file a second amended complaint would also cause undue prejudice to Defendants, prolonging litigation of meritless, time-barred claims. Accordingly, the Second Amended Complaint should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted. Accordingly, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice pursuant to Rule 12(b)(6) and grant such further relief as the Court deems just and proper.

Dated: May 15, 2026

Respectfully Submitted,

By: /s/ *Veronica A. Ucros Leon*
**HOWARD S. SUSSKIND (184696)**
**VERONICA A. UCROS LEON (1032006)**
**Sugarman, Susskind, & Braswell, P.A.**
Hsusskind@sugarmansusskind.com
vucros@sugarmansusskind.com
150 Alhambra Cir #725
Coral Gables, FL 33134
Telephone: (305) 529-2801

Facsimile: (305) 447-8115

**Attorneys for Defendants.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2026, a true and correct copy of the foregoing was served via CM/ECF on all counsel or parties of record.

Respectfully Submitted,

By: /s/ *Veronica A. Ucros Leon*
**HOWARD S. SUSSKIND (184696)**
**VERONICA A. UCROS LEON (1032006)**
**Sugarman, Susskind, & Braswell, P.A.**
Hsusskind@sugarmansusskind.com
vucros@sugarmansusskind.com
150 Alhambra Cir #725
Coral Gables, FL 33134
Telephone: (305) 529-2801
Facsimile: (305) 447-8115

**Attorneys for Defendants.**