**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

NATHAN BEMENT,
*an individual,*

Plaintiff,

v. Case No. 1:25-cv-25511-CMA

INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
LOCAL 769, a labor organization; THOMAS ESPOSITO,
in his official capacity as Business Agent,

Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION**

**TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff Nathan Bement, by and through undersigned counsel, respectfully opposes Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") [ECF No. 39] (the "Motion") and states as follows:

## INTRODUCTION

Defendants' Motion misreads the SAC, misstates the standards governing each of Plaintiff's three claims, and asks this Court to do at the pleading stage what the law reserves for summary judgment and trial: resolve disputed facts, weigh competing inferences against Plaintiff, and credit Defendants' characterization of the record over the SAC's well-pleaded allegations. On a Rule 12(b)(6) motion, the Court accepts Plaintiff's well-pleaded allegations as true and draws every reasonable inference in his favor. Applying that standard, each of Defendants' four arguments fails, and the Motion should be denied.

Count I (breach of the duty of fair representation under the RLA) is timely. The six-month period runs from when the employee knew or should have known of the union's "final action"—the point at which the grievance procedure "exhausted or otherwise broke down to the employee's disadvantage." This Court already declined to dismiss Count I as time-barred, and the SAC's new allegations do not change that result: read favorably, they show the Union tendered a single defective grievance and left the matter procedurally open, leaving the accrual date a fact question that cannot be resolved on the face of the pleading. Count I also states a claim, because the SAC pleads discriminatory, bad-faith, and arbitrary handling with concrete facts, not labels.

Counts II and III (Title VII religious discrimination and retaliation against Local 769) are timely on the face of the SAC, which pleads that the EEOC issued the operative right-to-sue notice on August 25, 2025 and that Plaintiff filed within 90 days of receipt. (SAC ¶ 39.) The 90-day clock runs from receipt, not issuance; Defendants' contrary argument rests entirely on an April 3, 2024 notice that appears nowhere in the SAC, was directed to a Florida address Plaintiff no longer occupies, and is offered only as an exhibit to their Motion—making whether and when Plaintiff received it a disputed fact that cannot be resolved against him on a Rule 12(b)(6) motion. Counts II and III also state plausible claims and cure the precise defects this Court identified: the SAC now pleads specific comparator allegations—members with non-religious grievances, including medical-exemption requests under the same mandate, whom the Union represented while refusing Plaintiff—and detailed facts supporting Plaintiff's objectively reasonable belief that United engaged in unlawful religious discrimination. Defendants are not entitled to dismissal, let alone dismissal with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts the complaint's well-pleaded allegations as true and construes them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678; *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). At the pleading stage, a Title VII plaintiff need not establish a *McDonnell Douglas* prima facie case; the complaint need only "provide enough factual matter (taken as true) to suggest" intentional discrimination. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015); *accord Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) (the prima facie case is an evidentiary standard, not a pleading requirement); *see Twombly*, 550 U.S. at 569–70 (reaffirming *Swierkiewicz* and disclaiming any "heightened" fact-pleading requirement).

Dismissal on statute-of-limitations grounds at the Rule 12(b)(6) stage is appropriate "only if it is apparent from the face of the complaint that the claim is time-barred," *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *accord Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003). A limitations defense is an affirmative defense that a plaintiff need not negate in the complaint, and where timeliness turns on a disputed fact—such as when a union's refusal became final, or when a plaintiff received a right-to-sue notice—dismissal at the pleading stage is improper.

## ARGUMENT

### I. COUNT I IS TIMELY, AND DEFENDANTS' RENEWED LIMITATIONS ARGUMENT REPEATS THE ONE THIS COURT ALREADY REJECTED.

The Eleventh Circuit applies a six-month limitations period to RLA duty-of-fair-representation claims. *Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F.2d 1544, 1546 (11th Cir. 1987). That period runs from when the employee "knew or should have known" of the union's "final action," meaning "the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." *Proudfoot v. Seafarers' Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986); *Hill v. Ga. Power Co.*, 786 F.2d 1071, 1074 (11th Cir. 1986); *Adams v. United Paperworkers Int'l Union*, 189 F.3d 1321, 1323 (11th Cir. 1999) (LMRA hybrid claim). The accrual trigger is thus not the underlying dispute, nor the employee's first awareness that the union has been unhelpful, but the point at which the grievance machinery has come to a halt to the employee's disadvantage. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1583–84 (S.D. Fla. 1993) (RLA fair-representation claim had not accrued where the union's alleged failure to act "was not complete" until a later institutional step, and the accrual question could not be "answered negatively based on the pleadings alone"). This Court previously declined to dismiss Count I as time-barred, holding it was "not apparent on the face of" the Amended Complaint that the violation accrued more than six months before filing, because the pleading did not "clearly allege the violations ended on December 7, 2021," and the claim "may embrace alleged breaches . . . postdating" Plaintiff's termination. [ECF No. 32 at 6–7.] Defendants now contend the SAC's new allegations—the post-termination draft grievance and the November 2022 EEOC charge—resolve that ambiguity against Plaintiff. They do not. Read in the light most favorable to Plaintiff, those allegations do not establish that the grievance procedure had broken down to his disadvantage in

any final sense outside the limitations window, and they leave the accrual date a fact question that cannot be resolved on the face of the pleading. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

**A. The SAC pleads ongoing union conduct that was never finally communicated.**

The SAC alleges that the draft grievance described above was "the only grievance-related action" Defendants took, that Defendants "did not pursue any grievance under the CBA's nondiscrimination provisions," and that the matter was never resolved or closed. (SAC ¶¶ 31–32, 47.) Whether the grievance procedure "exhausted or otherwise broke down to [Plaintiff's] disadvantage," *Proudfoot*, 779 F.2d at 1559, and if so when, is a fact question that the face of the SAC does not answer. Accrual is tied to the procedure's breakdown, not the employee's earlier awareness that the union was reluctant or inactive. *Hayes v. Reynolds Metals Co.*, 769 F.2d 1520, 1522–23 (11th Cir. 1985) (claim accrues "at the point when the grievance procedure comes to a halt," not when the employee first perceives mishandling); *Hill v. Ga. Power Co.*, 786 F.2d 1071, 1074 (11th Cir. 1986). The Eleventh Circuit's decisions locate that breakdown in an identifiable terminal event—a grievance withdrawn, a decision communicated as final, or a binding settlement that ends the process. *See Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1205–06 (11th Cir. 2002) (claim accrued when a binding settlement "exhausted the grievance process"). The SAC alleges no such event—no withdrawal, no communicated final decision, and no settlement, only a defective grievance left unresolved—so Defendants cannot show untimeliness on the face of the pleading. Indeed, the limitations period may be tolled "until the [u]nion [takes] its last action on the [employee's] behalf," and a genuine fact issue exists where the union "by its words and deeds,

lulled [the employee] into inaction." *Hill*, 786 F.2d at 1075. The SAC's allegations raise exactly that fact issue, which cannot be resolved against Plaintiff on the pleadings.

Defendants brand the SAC's allegations "conclusory" and "contradicted" by the description of the draft grievance, and contend that the draft grievance was itself the identifiable breach. The two points are in tension with each other, not with the SAC. If the draft grievance is treated as the operative breach, that does not establish a completed, final breakdown of the grievance process: the SAC alleges the draft grievance was prepared under an inapplicable provision, left the religious-accommodation claim unaddressed, and was followed by no further action and no communicated refusal—leaving the matter procedurally open. (SAC ¶¶ 30–31.) A union's tender of one defective, off-point grievance vehicle, followed by silence rather than a definitive denial, is not the "exhaust[ion]" or "br[eak]down" of the grievance procedure that triggers accrual under *Proudfoot*. There is no inconsistency between Plaintiff's merits and timeliness positions: a union can handle a grievance inadequately (the merits question) and still leave it formally unresolved (the accrual question). Whether and when the process broke down to Plaintiff's disadvantage is a fact question. *La Grasta*, 358 F.3d at 845.

### B. Defendants' reliance on Plaintiff's declining to sign the draft grievance inverts the analysis.

Defendants argue that because Plaintiff declined to sign the draft grievance, the Union cannot have been refusing to represent him. That inverts the analysis. The duty of fair representation is not satisfied by the bare fact of activity; the question is whether the Union's conduct, viewed as a whole, was arbitrary, discriminatory, or in bad faith. A union that prepares a grievance under the wrong CBA article, advances a substantively irrelevant theory, and conditions the member's participation on a surrender of all settlement authority has not discharged its duty

by going through procedural motions. (SAC ¶ 30.) Defendants' argument would transform Plaintiff's appropriate refusal to authorize a facially deficient grievance into proof that the Union fulfilled its duty. The opposite is true: the breach Plaintiff alleges is precisely the Union's presentation of an inadequate vehicle as its only response to a religious-discrimination claim, followed by its failure to pursue any grievance under the CBA's nondiscrimination provisions, to invoke any religious-accommodation framework, to investigate, or to communicate any final refusal. (SAC ¶¶ 30–31.)

**C. The EEOC charge does not establish accrual on its filing date.**

Defendants' strongest timeliness point is that the SAC alleges Plaintiff filed an EEOC charge on November 1, 2022 complaining of "Defendants' continuing course of conduct in failing and refusing to represent" him (SAC ¶ 39), which they say proves awareness of the breach by that date. Plaintiff does not dispute that, by November 2022, he was aware the Union had not acted as he wished. But awareness that a union has been unhelpful is not, without more, knowledge of the union's "final action"—"the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." *Proudfoot*, 779 F.2d at 1559; *Hayes*, 769 F.2d at 1522–23. The charge describes a "continuing" course of conduct; whether that conduct had matured into a completed breakdown or remained ongoing is a question the charge's text does not resolve, and the inference must be drawn in Plaintiff's favor. *La Grasta*, 358 F.3d at 845. Defendants' own authorities fix accrual at an identifiable terminal event—a known withdrawal or a binding settlement, *see Coppage*, 281 F.3d at 1205–06—and the SAC pleads none. While a known final refusal cannot be revived by later requests, *id.* at 1206, that rule presupposes a final refusal in the first place. Finally, the EEOC charge does not independently start or toll the RLA clock: pursuing a Title VII charge does not toll the six-month limitations period governing a hybrid

duty-of-fair-representation claim. *See Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 550 (7th Cir. 1987) (the time for filing a section 301/fair-representation claim is not tolled by the pendency of a Title VII charge). Whether and when the grievance procedure broke down to Plaintiff's disadvantage is a fact question unsuited to resolution on the pleadings.

## II. COUNT I STATES A PLAUSIBLE CLAIM FOR BREACH OF THE DUTY OF FAIR REPRESENTATION.

A union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991); *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Although *Vaca* arose under the NLRA, the same standard governs the RLA duty: the Supreme Court applied it to an RLA claim in *O'Neill* itself, and courts apply NLRA fair-representation principles to RLA claims. *See Beers v. S. Pac. Transp. Co.*, 703 F.2d 425, 428 (9th Cir. 1983); *Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1582 (S.D. Fla. 1993). Defendants invoke the same cross-application, but their authority for it is an unpublished, non-precedential disposition, *see* Motion at 5, whereas the bridge here rests on *O'Neill* and binding precedent. The standard's three prongs are disjunctive; Plaintiff need plead only one, and the SAC pleads all three. Plaintiff relies principally on the discriminatory and bad-faith grounds, which turn on the religion-specific character of the Union's conduct, and pleads arbitrary handling in the alternative.

### A. The SAC pleads discriminatory conduct with comparator allegations and disparate treatment.

A union acts discriminatorily when, "without a legitimate purpose," it favors some members over others. *Ramey v. Dist. 141*, 378 F.3d 269, 277 (2d Cir. 2004). Defendants' recurring premise—that preparing a draft grievance and attending a meeting necessarily satisfied the duty—

is wrong as a matter of law; the duty governs not only whether a union acts but how, and a union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca v. Sipes*, 386 U.S. 171, 191 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 569–71 (1976). The SAC alleges Defendants actively represented other Local 769 members during the same period on non-religious grievances under the same CBA—including discharge and discipline unrelated to the mandate, seniority, work assignments, compensation, and medical-accommodation requests under the same vaccine mandate—while refusing members who sought religious exemptions. (SAC ¶¶ 33–36.) A member who sought a medical exemption from the same mandate, under the same CBA, from the same Union, is plausibly comparable to one who sought a religious exemption. Defendants may ultimately contend that medical and religious exemptions warrant different handling, but that is a "legitimate purpose" defense to be developed on a record, not a basis for dismissal: the SAC alleges the grievances were materially similar in the respects that matter—same CBA, employer, duty, and type of matter routinely processed—differing "only in that they did not involve a religious basis." (SAC ¶ 36.) Taken as true and with inferences drawn in Plaintiff's favor, that disparity supports a plausible inference of discrimination motivated by religion. (SAC ¶¶ 37, 44.)

**B. The SAC pleads bad faith through the religion-specific character of the refusal.**

Bad faith encompasses "fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v. Air Line Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). The SAC alleges Defendants knew of the religious character of Plaintiff's grievance (SAC ¶¶ 17, 62), told members there would be no Union opposition to the mandate, no member meeting, and no vote (SAC ¶ 26), and then pursued only the facially deficient Article 19/Article 14 grievance instead of the religious-

discrimination theory the grievance plainly demanded—all while representing members with non-religious grievances. The contrast supports a reasonable inference that the Union's inaction was undertaken "with the intent to abandon Plaintiff's grievance" because of its religious character. (SAC ¶¶ 37, 45.) At the pleading stage, that is enough. Defendants' invocation of the rule that mere negligence does not breach the duty is premature: whether the Union's conduct was negligent error or discriminatory, bad-faith abandonment is a quintessential factual dispute.

**C. The SAC also pleads arbitrary handling of the grievance.**

Independently, the SAC pleads arbitrary handling. A union's conduct is arbitrary if it falls "outside a wide range of reasonableness" so as to be irrational, *O'Neill*, 499 U.S. at 67, and the duty "may [be] breached whenever a union ineptly handles a grievance because it is ignorant of those contract provisions having a direct bearing on the case," *Milstead v. Int'l Bhd. of Teamsters, Local 957*, 580 F.2d 232, 235 (6th Cir. 1978); see *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982) ("[t]he focus is on the union's conduct during the course of its representation"). The SAC alleges Defendants pursued a single grievance vehicle facially inadequate in two independent respects: it invoked CBA Article 19, which by its terms reaches only "disciplinary action[s] not involving loss of pay" and so did not apply to Plaintiff's discharge; and it advanced an Article 14 (Safety and Health) theory unconnected to his religious-accommodation claim—while making no investigation of United's denial and no demand for accommodation enforcement. (SAC ¶¶ 29–31, 46.) Defendants' reliance on the principle that a member cannot dictate the Union's strategy, theory, or settlement authority, and that unions may settle without a grievant's approval, *see Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989), does not defeat the claim at this stage. *Shane* protects a union's good-faith, reasoned choices among legitimate options; it does not immunize a union that selects an admittedly

inapplicable contractual vehicle and omits the controlling nondiscrimination and accommodation provisions. Plaintiff does not allege mere disagreement with a reasoned strategic choice; he alleges the absence of any reasoned choice. To the extent Defendants characterize that as a "simple mistake[] of judgment" insufficient under *Harris*, that characterization presents a fact question, and in any event the arbitrariness theory is offered in the alternative to the discriminatory and bad-faith grounds above, on which Plaintiff principally relies and either of which independently states a claim.

## III. COUNTS II AND III ARE TIMELY UNDER THE 90-DAY RIGHT-TO-SUE WINDOW.

Defendants' timeliness argument rests on a single contested premise: that an EEOC notice dated April 3, 2024 (Motion Ex. 1) started the 90-day clock more than nineteen months before Plaintiff filed suit. That argument fails as a matter of both law and fact.

### A. The 90-day clock runs from receipt, not issuance.

Title VII's 90-day window runs from the plaintiff's receipt of the right-to-sue notice, not from the EEOC's issuance of it. *Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339–42 (11th Cir. 1999). The Eleventh Circuit applies only a rebuttable three-day presumption of receipt after mailing, and that presumption yields to a factual showing of non-receipt. *Zillyette*, 179 F.3d at 1342. Where there is a question whether and when a plaintiff received a notice, that question cannot be resolved on a Rule 12(b)(6) motion. *La Grasta*, 358 F.3d at 845. Defendants' entire argument assumes the April 3, 2024 notice was received and started the clock—but they offer no certified-mail return receipt, no delivery confirmation, and no acknowledgment from Plaintiff or counsel. The mere existence of a notice in the EEOC's files does not establish receipt by the addressee.

### B. The April 3, 2024 notice and its receipt are matters outside the pleadings that cannot be resolved against Plaintiff on a Rule 12(b)(6) motion.

The SAC pleads that the EEOC issued the operative Notice of Right to Sue on August 25, 2025 and that Plaintiff filed within 90 days of receipt. (SAC ¶ 39.) The SAC does not reference the April 3, 2024 notice at all; that notice appears only as an exhibit to Defendants' Motion. Whether Plaintiff received the April 3, 2024 notice—and if so, when—is a question of fact found nowhere on the face of the SAC, and therefore cannot supply a basis for dismissal. *Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991) (limitations period does not run where claimant "through no fault of his own has failed to receive the suit letter"); see *Key v. Hyundai Motor Mfg. Ala.*, No. 2:19-cv-767-ECM, 2021 WL 3856562 (M.D. Ala. Aug. 31, 2021) (denying dismissal where plaintiff first learned of the notice when it was attached to a motion to dismiss); *Luke v. Residential Elevators, Inc.*, No. 4:10-cv-00524-SPM-WCS (N.D. Fla. Jan. 28, 2011) (reliance on the EEOC mailing date "inappropriate" where the period turns on actual receipt). The notice was directed to Plaintiff at a Saint Cloud, Florida address, while the SAC alleges he has since relocated to West Virginia. (Mot. Ex. 1; SAC ¶ 8.) Defendants suggest the notice's distribution block lists an additional recipient, so receipt may be imputed. Under *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), receipt by a claimant's designated representative can constitute receipt by the claimant—but that rule turns on facts found nowhere in the SAC or Exhibit 1: whether any listed person was in fact Plaintiff's designated representative on this charge, and whether that person received and reviewed the notice. There, the Eleventh Circuit distinguished *Irwin* and declined to impute receipt because the person who took delivery was not the claimant's designated representative. *Stallworth*, 936 F.2d at 524 & n.4. Whether the analogous facts here support or defeat imputation cannot be determined on the pleadings. Because

timeliness turns on a receipt date that is both disputed and absent from the face of the pleading, dismissal on the 90-day ground is improper.

### C. The face of the SAC pleads the August 25, 2025 notice and timely filing within 90 days of receipt.

On the face of the SAC, the operative notice is the one issued on August 25, 2025, and Plaintiff alleges he filed within 90 days of receiving it. (SAC ¶ 39.) That general averment of timely filing after receipt is sufficient at the pleading stage, and the Court need look no further to deny the Motion. Fed. R. Civ. P. 9(c); *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). Plaintiff filed this action on November 24, 2025, within 90 days of the pleaded receipt date; accepting the SAC's well-pleaded allegations as true, Counts II and III are timely.

The August 25, 2025 notice is referenced in the SAC (¶ 39) and is central to Counts II and III. The Eleventh Circuit's incorporation-by-reference doctrine is party-neutral: a court may consider a document "central to the plaintiff's claim" where "the authenticity of the document is not challenged," and the document "need not be physically attached to a pleading." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). EEOC right-to-sue notices are independently subject to judicial notice as public records. *See Smith v. City of Atl. Beach*, No. 3:18-cv-1459-J-34MCR (M.D. Fla. Feb. 12, 2020) (Howard, J.) (taking judicial notice of EEOC charges and right-to-sue notices); *see also Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (EEOC documents are public records subject to judicial notice under Fed. R. Evid. 201); *Hodge v. Miami Herald Co.*, No. 08-20633-CIV, 2008 WL 4180012 (S.D. Fla. Sept. 10, 2008) (judicial notice of EEOC right-to-sue letter as a public record)—the very authority Defendants cite. *See*

Motion at 9 (urging judicial notice of EEOC right-to-sue documents). It would be incongruous to take judicial notice of the 2024 notice directed to the Union as a respondent while disregarding the August 25, 2025 notice the EEOC issued on the same charge. Should the Court conclude that resolving the competing notices requires matters outside the pleadings, the proper course is to deny the Motion—because receipt is then a disputed fact—or to grant Plaintiff leave to amend to plead these facts expressly, not to dismiss.

Nor can Defendants invoke the rule that a reissued notice cannot revive an already-expired filing period. See *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017). That rule presupposes that the original 90-day period was validly triggered and then expired—a revival question. The question here is logically prior: whether the April 2024 notice ever triggered the period at all, which turns on receipt. That is the question *Stallworth* addresses, and it is distinct from the revival question in *Stamper*. If, as the pleading and the surrounding circumstances indicate, the April 2024 notice did not trigger the clock through receipt, then the August 25, 2025 notice is not a reviving notice but simply the notice from which the period ran, and *Stamper* is not implicated. Because that threshold receipt question cannot be resolved against Plaintiff on the pleadings, Defendants' reliance on the April 2024 issuance date fails regardless of any reconsideration framework.

## IV. COUNT II STATES A PLAUSIBLE TITLE VII RELIGIOUS-DISCRIMINATION CLAIM.

Title VII makes it unlawful for a labor organization to discriminate against any individual because of religion. 42 U.S.C. § 2000e-2(c)(1). At the pleading stage, the complaint need only "provide enough factual matter (taken as true) to suggest" intentional discrimination. *Surtain*, 789 F.3d at 1246. This Court dismissed Count II from the Amended Complaint because Plaintiff's

"sole allegation" was the bare statement that the Union "represented other members with non-religious grievances," unsupported by corroborating facts. [ECF No. 32 at 8–9.] The SAC cures that defect.

The SAC now alleges specific, materially similar comparators and the respects in which they are similarly situated: during the same period, Defendants processed grievances concerning discharge and discipline unrelated to the mandate, seniority, work assignments and scheduling, compensation, and—most pointedly—non-religious accommodation requests, including medical-accommodation requests in connection with the same vaccine mandate, for United employees in Plaintiff's craft or class, while refusing members who sought religious exemptions. (SAC ¶¶ 34–35.) These comparator grievances arose under the same CBA, were directed at the same employer, implicated the same duty, and were of the type the Union routinely processed, differing from Plaintiff's "only in that they did not involve a religious basis." (SAC ¶ 36.)

Defendants' sole response is to demand a named individual comparator. The Eleventh Circuit imposes no such requirement at the Rule 12(b)(6) stage; a Title VII complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case" and must only "provide enough factual matter (taken as true) to suggest" intentional discrimination. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008); *Surtain*, 789 F.3d at 1246. Courts in this District have rejected the very argument Defendants press, holding that a discrimination claim is not subject to dismissal merely because the plaintiff fails to identify a comparator. *Gregori v. Hometown Foods USA, LLC*, No. 23-cv-23356 (S.D. Fla. Feb. 7, 2024) (Altman, J.); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) (the prima facie framework is an evidentiary standard, not a pleading requirement). That rule is sensible because information about other members' grievances lies in the Union's files, not Plaintiff's. The SAC's

allegations—specific categories of grievances pursued, the same employer, CBA, Union representatives, and period, with religion as the sole distinguishing factor—are sufficient at this stage. (SAC ¶¶ 33–37.)

## V. COUNT III STATES A PLAUSIBLE TITLE VII RETALIATION CLAIM.

To state a retaliation claim, Plaintiff must plausibly allege protected activity, a materially adverse action, and a causal link. *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998); *Henderson v. City of Birmingham*, 826 F. App'x 736, 741 (11th Cir. 2020). The protected-activity element requires a subjectively honest and objectively reasonable belief that the opposed conduct violated Title VII. *Ceus v. City of Tampa*, 803 F. App'x 235, 245 (11th Cir. 2020). Plaintiff "need not prove the underlying discriminatory conduct that he opposed was actually unlawful." *Little v. United Techs.*, 103 F.3d 956, 960 (11th Cir. 1997). This Court dismissed Count III solely because the Amended Complaint "alleged nothing about United's unlawful employment practices," and cautioned Plaintiff to plead causation on amendment. [ECF No. 32 at 11–12 & n.6.] The SAC addresses both points.

### A. Plaintiff engaged in protected activity supported by an objectively reasonable belief.

Plaintiff engaged in protected activity by filing an EEOC charge of religious discrimination against United on November 8, 2021, filing a Florida administrative complaint against United on December 1, 2021, and communicating to Local 769 and Esposito that United was discriminating against him because of religion. (SAC ¶¶ 16, 60.) The SAC now pleads detailed facts establishing the objective reasonableness of his belief that United's conduct was unlawful. Principally, United denied his religious-accommodation request "without conducting any inquiry into the sincerity or substance" of his beliefs, citing only an August 31, 2021 cutoff, despite his 32-year tenure—a

categorical denial without individualized assessment, followed by discharge, that alone would lead a reasonable employee to believe United engaged in religious discrimination and failed to accommodate. (SAC ¶¶ 14–15.) Reinforcing that belief, the SAC alleges United granted religious exemptions to other employees, including newly hired employees, after the same cutoff (SAC ¶ 24), and that the State of Florida's proceeding concerning United's handling of religious-exemption requests resulted in United paying $15,000 to the State (SAC ¶¶ 20, 61).

Defendants' contention that United's "untimeliness" rationale defeats objective reasonableness confuses pleading-stage analysis with merits adjudication. A plaintiff "engages in statutorily protected activity when he . . . protests an employer's conduct which is actually lawful, so long as he . . . demonstrates a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Davis v. Orange Cnty.*, No. 23-12759 (11th Cir. July 23, 2024); accord *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (the prima facie burden "is not onerous"). The conduct opposed need only "be close enough to support an objectively reasonable belief that" it is unlawful, *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999), and that reasonableness is not ordinarily suited to resolution on the pleadings. In *Davis*, the Eleventh Circuit held that dismissal of an opposition-clause retaliation claim arising from a COVID-19 vaccine mandate was premature at the Rule 12(b)(6) stage, vacating and remanding. On the facts pleaded—a categorical denial without individualized review, post-cutoff grants of religious exemptions to other employees, and a state enforcement proceeding that resulted in United's payment—Plaintiff has plausibly alleged an objectively reasonable belief that United engaged in unlawful religious discrimination. A plaintiff "need not . . . show that the employer actually engaged in an unlawful employment practice," and it is "irrelevant" that he does not prevail on the underlying claim, so long as his belief was reasonable when he opposed the

conduct. *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998); *Wu v. Thomas*, 863 F.2d 1543, 1546 (11th Cir. 1989). The dismissal of Plaintiff's separate claims against United (SAC ¶ 22) therefore does not defeat the reasonableness of his belief. Defendants respond (Mot. at 14 n.3) that United's post-cutoff grants went to new hires not similarly situated to a 32-year incumbent. That argument cuts the wrong way: a reasonable employee who learns that United extended religious exemptions to new hires after the same cutoff invoked to deny him—despite his far greater tenure—has more reason, not less, to believe the cutoff was pretextual; whether new hires are proper merits comparators is a distinct question that does not matter at this stage. The Florida proceeding under Fla. Stat. § 381.00317—which culminated in United's $15,000 payment in connection with its handling of religious-exemption requests under the same mandate—is not an adjudication of Title VII liability, but it is one more fact that would lead a reasonable employee to believe United's treatment of religious objectors was unlawful. (SAC ¶ 61.)

### B. The SAC pleads adverse action and causation.

A union's deliberate refusal to process a member's religious-discrimination grievance is a materially adverse action; such conduct "well might dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The SAC alleges Defendants refused to file any grievance challenging the accommodation denial, to investigate, to seek enforcement of the CBA's nondiscrimination protections, or to provide post-discharge assistance. (SAC ¶ 63.)

Causation is pleaded principally through the religion-specific character of the refusal: Defendants represented members with non-religious grievances during the same period, under the same CBA, while refusing all meaningful assistance to Plaintiff. (SAC ¶¶ 33–37, 64.) Disparate treatment of that kind—action against the member who engaged in protected, religion-based

opposition while assisting comparable members who did not—supports a plausible inference of causal connection independent of timing. That inference is reinforced by the close sequence between Plaintiff's protected activity and the Union's refusal to act, including in the period following the November 15, 2021 fact-finding meeting at which Plaintiff's religious-accommodation claim was at issue and a Local 769 representative was present. (SAC ¶ 64.) Defendants' knowledge is pleaded directly: Local 769 representatives attended that meeting, Esposito was named on the December 7, 2021 termination letter, and Plaintiff communicated the religious nature of his grievance to the Union. (SAC ¶ 62.) Defendants' assertion that "knowledge is not causation" misreads the SAC, which pleads knowledge plus religion-specific differential treatment—enough at the pleading stage. Although Title VII retaliation ultimately requires but-for causation, *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013), a plaintiff need not prove but-for cause at the pleading stage; he need only allege facts making the causal link plausible. Causation is not measured by temporal proximity alone. *See Gregori v. Hometown Foods USA, LLC*, No. 23-cv-23356 (S.D. Fla. Feb. 7, 2024) (Altman, J.); *DiPietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1292–93 & n.8 (S.D. Fla. 2020) (Altonaga, J.) (temporal proximity is one consideration in the causation inquiry, not a pleading requirement, and dismissal on proximity alone is premature). The SAC pleads not merely timing but the Union's knowledge of the religious nature of Plaintiff's opposition coupled with its differential treatment of comparable members—a combination that plausibly supports causation.

## VI. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.

Defendants ask the Court to dismiss with prejudice, contending that further amendment would be futile because Plaintiff has already amended once. Futility, however, is measured against

whether a proposed amendment could state a claim, not against the number of prior pleadings. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319-20 (11th Cir. 1999); Fed. R. Civ. P. 15(a)(2). Leave to amend is to be "freely give[n]" absent a substantial reason such as "undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies . . ., undue prejudice . . ., [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). None of those disqualifiers is present: this is Plaintiff's first amendment following the Court's first dismissal, sought early and before any discovery, pretrial order, or trial date—unlike the eve-of-trial, years-late motion denied in *Burger King*. And amendment is futile only if "the complaint as amended is still subject to dismissal," id. at 1320, which is not so here: the remaining points Defendants press depend on facts that can be pleaded or are within Defendants' control. If the Court concludes the SAC must affirmatively plead the circumstances of the April 2024 notice, Plaintiff can seek leave to allege the facts concerning that notice, his address history, and the EEOC's August 2025 issuance and transmittal. And the identities of the non-religious grievances the Union processed lie in the Union's own files and are the proper subject of discovery. The SAC directly addressed the two deficiencies the Court identified in its April 17, 2026 Order, and any remaining issue concerns matters that amendment or discovery would resolve—so dismissal with prejudice is unwarranted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss the Second Amended Complaint in its entirety. In the alternative, any dismissal should be without prejudice and with leave to amend.

Dated: May 31, 2026

Respectfully submitted,

**SABATINI LAW FIRM, P.A.**

/s/ Anthony F. Sabatini
Anthony F. Sabatini, Esq.
Florida Bar No. 1018163
Sabatini Law Firm, P.A.
1601 E. 1st Avenue
Mount Dora, FL 32757
(352) 455-2928
anthony@sabatinilegal.com

/s/ John M. Pierce
John M. Pierce, Esq. (California Bar No. 250443)
*(Admitted Pro Hac Vice)*
John Pierce Law P.C.
21550 Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
(321) 961-1848
jpierce@johnpiercelaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2026, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will serve electronic notice on all counsel of record.

/s/ Anthony F. Sabatini

Anthony F. Sabatini